UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WYLIE G. HUNTER,<br><br>          Plaintiff,<br><br>          v.<br><br>STATE OF IDAHO, et al,<br><br>          Defendants. | Case No. 1:19-cv-00113-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court are twelve (12) motions filed by the parties in this case. This extensive motion practice revolves around Plaintiff Wylie Hunter's Motions to Vacate Judgment for Fraud on the Court (Dkts. 4, 41, 51) and Defendants' various motions to dismiss (Dkts. 12, 13, 39, 44, 47, 49, 53). Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motions without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B).

The Court will collectively address the motions below. In short, however, the Court GRANTS Defendants' various motions to dismiss, DENIES Hunter's Motion for Fraud on the Court, and grants Hunter leave to amend his complaint.

## II. BACKGROUND

### A. Factual Background

This action arises from an underlying Idaho State criminal case which began in 2007 when Idaho State Police initiated a traffic stop on Hunter following what Idaho State Police claimed were traffic infractions. *Hunter v. State*, No. 41992, 2015 WL 3823828, at *1 (Idaho Ct. App. June 19, 2015). After pulling Hunter over, Idaho State Police noticed an odor of marijuana and requested that a drug dog be brought to the scene. *Id.* Pursuant to the probable cause afforded by the odor of marijuana and the drug dog's subsequent "alert," Idaho State Police searched Hunter's vehicle—which turned out to be a rental—and discovered 75 pounds of marijuana. *Id.* Hunter was charged with trafficking marijuana in violation of Idaho Code §§ 37-2732B(a)(1)(C), 18-204. *Id.*

During the subsequent criminal proceedings, Hunter filed a motion to suppress, challenging the reasonable suspicion for the stop and the probable cause to perform the warrantless vehicle search. *Id.* The Kootenai County District Court denied the motion. Thereafter, Hunter entered a conditional plea of guilty and sought a direct appeal of the district court's denial of his motion to suppress. The Idaho Court of Appeals found that the stop was proper and upheld the denial of Hunter's motion to suppress. *State v. Hunter*, No. 36728, 2011 WL 11037668, at *2-6 (Idaho Ct. App. June 16, 2011).

After this appeal was complete, Hunter "filed a petition for post-conviction relief, alleging ineffective assistance of his prior attorneys, especially with regard to his motion to suppress. The alleged deficiencies included failing to investigate and call certain defense witnesses, failing to investigate and impeach the state's witnesses, and failing to seek

discovery of exculpatory evidence." *Hunter,* 2015 WL 3823828, at *1. The state filed a motion for summary dismissal, arguing Hunter's claims were conclusory in nature and unsupported by evidence. *Id*. The district court allowed Hunter an opportunity to depose his prior attorneys, and others, involved in his criminal case. *Id*. at *2. Following these depositions, the District Court granted the state's motion for summary dismissal, and Hunter again appealed. *Id*.

In this second appeal, Hunter argued error on the grounds that the district court improperly denied his request for discovery and that he was provided ineffective assistance of counsel. *Hunter*, 2015 WL 3823828, *3-9. As the Idaho Court of Appeals explained:

> Specifically, Hunter argues that the district court abused its discretion by not allowing him to engage in discovery of the items outlined in his initial motion for discovery, to wit: *transcripts of any audio or video from the traffic stop*; transcripts of dispatcher radio conversations between the two officers involved in the traffic stop . . .

*Hunter*, 2015 WL 3823828, *4 (emphasis added). The Idaho Court of Appeals found that the discovery requests were "speculative in nature or unnecessary to protect his substantial rights" because each was unlikely to demonstrate that the police lacked probable cause to conduct the stop. *Id.* Regarding the discovery allegations, the Idaho Court of Appeals noted that "although Hunter alleged that these recordings would corroborate his version of events during the stop and somehow impeach the officer's credibility, these claims are conclusory and wholly unsupported. Thus, the very existence of this specific discovery and its relevance to Hunter's suppression or ineffective assistance of counsel claims was speculative." *Id.* As for the ineffective assistance of counsel claim, the Idaho Court of

Appeals found that there was no evidence that the failure of counsel to pursue the recordings would have changed the outcome of Hunter's suppression motion. *Id.* at *8.

Succinctly put, the Idaho Court of Appeals held that "Hunter [] failed to show that the district court abused its discretion by denying his motion for discovery or erred in granting the state's motion for summary dismissal." *Id.* at *9.

Roughly four years later, Hunter initiated the pending federal lawsuits alleging essentially—in a 42 U.S.C. § 1983-esque manner—that the various defendants effectuated some type of fraud on the courts below (specifically as it relates to the "withheld" DVD/Audio evidence) and that his judgment should be vacated.

### B. Procedural Background[1]

On April 5, 2019, Hunter filed his Complaint in the present case—civil case no. 1:19-cv-00113 ("Case 113"). Dkt. 1. Broadly speaking, Hunter alleges that Defendants violated his rights by perpetuating "fraud on the court" during the pendency of his Idaho state criminal proceedings discussed above. *See generally* Dkts. 1,4. In early May 2019, Defendants began filing motions to dismiss. Dkts. 12,13. On May 23, 2019, Hunter filed a motion seeking additional time to respond to the pending motions to dismiss. Dkt. 21. As part of that Motion, Hunter indicated that he would be filing a separate federal lawsuit "to challenge my underlying conviction . . . and name[] additional defendants." Dkt. 21, at 2. On June 5, 2019, the Court granted Hunter's request for more time, set new briefing deadlines, and took no position on his comments about filing a new case. Dkt. 24.

---

[1] Unless otherwise noted, all docket citations refer to the docket in this, the lead, case (Case 113).

On June 20, 2019, Hunter filed a second federal lawsuit—civil case no. 1:19-cv-00227 ("Case 227"). The Clerk of the Court randomly assigned Case 227 to Judge B. Lynn Winmill. In accordance with his prior representations, Case 227 focused on Hunter's underlying conviction and named additional defendants. Case 227, Dkts. 1,4. Shortly thereafter, one of the new defendants filed a motion to dismiss in that case. Case 227, Dkt. 12.

Meanwhile, in Case 113, Defendant Barry McHugh filed his Motion to Consolidate on July 16, 2019, alleging that the newly filed case (Case 227) should be joined with Case 113 because both cases stem from the same underlying facts and circumstances and consolidating the two cases would promote judicial economy and limit confusion. Dkt. 31. Hunter opposed consolidation. Dkt. 34.

On July 23, 2019, certain Defendants in Case 227 filed a similar Motion to Consolidate. Case 227, Dkt. 14. Other defendants joined the request. Case 227, Dkt. 16. Simultaneously, State Defendants filed a Motion to Stay Case 227 pending the Court's resolution of the earlier filed motion to consolidate in Case 113. Case 227, Dkt. 15. Judge Winmill granted the Motion to Stay, ruling that "this case [Case 227] will be stayed pending United States District Judge David C. Nye's determination of the Motion to Consolidate Cases in Case No. 1:19-CV-00113-DCN." Case 227, Dkt. 17. Further, Judge Winmill vacated all deadlines and pending motions in Case 227. *Id.*

Ultimately, the Court found that because the facts of the two cases were substantially similar, consolidating the matters would "avoid duplicative litigation, be an efficient use of judicial resources, and avoid potential conflicting results." Dkt. 38, at 4-5.

As part of the consolidation process, the Court transferred certain pending motions from Case 227 into Case 113—hence the numerous pending motions at issue in this case.

After the cases were consolidated and the motions transferred, the parties updated/supplemented their various motions to better conform with the posture of the case. Hunter also filed a Motion for Judicial Disqualification (Dkt. 54) and a Motion for Summary Judgment (Dkt. 68). Defendants moved for an extension of time to respond to Hunter's Motion for Summary Judgment (Dkts. 69, 71, and 72), arguing that the Court should make certain preliminary rulings on the other motions before analyzing the Motion for Summary Judgment. The Court agreed and stayed briefing on Hunter's Motion for Summary Judgment until it had an opportunity to rule on the other pending motions. Dkt. 82. The issues are now ripe for the Court's review.

### III. ANALYSIS

### A.  Motion for Judicial Disqualification (Dkt. 54)

At the outset, the Court will address Hunter's Motion for Judicial Disqualification as this motion challenges the Court's authority to preside over this case in general, and, as a result, its authority to rule on any of the other pending motions.

In his Motion, Hunter broadly claims that the undersigned has a "longstanding professional and personal relationship[] [with] several of the defendants . . . ." Dkt. 54, at 2. Hunter also claims that various rulings (by the undersigned and by Judge B. Lynn Winmill) show that each has a conflict of interest in this case.

The Court has thoroughly reviewed the record and determines that Hunter has not shown that 28 U.S.C. §§ 144[2] or 455[3], governing disqualification of judges, or any case

---

[2] Section 144 provides that a judge must recuse himself or herself from a case "[w]henever a party to any proceeding … makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party."

[3] Section 455 provides as follows:

> (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

> (b) He shall also disqualify himself in the following circumstances:

> > (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

> > (2) Where in private practice he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it;

> > (3) Where he has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy;

> > (4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;

> > (5) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:

> > > (i) Is a party to the proceeding, or an officer, director, or trustee of a party;

> > > (ii) Is acting as a lawyer in the proceeding;

> > > (iii) Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding;

> > > (iv) Is to the judge's knowledge likely to be a material witness in the proceeding.

interpreting those sections, applies in this case. The legal profession in the District of Idaho is smaller than in other states and, as a result, the undersigned is professionally acquainted with *some* of the named defendants in this case.[4] That said, being acquainted with, or having a professional relationship with, an individual (attorney or otherwise) is not sufficient to support a motion for disqualification. *See Pellegrini v. Merch.*, No. 116CV01292LJOBAM, 2017 WL 735740, at *2 (E.D. Cal. Feb. 24, 2017) ("As with most judges, the undersigned has previously attended professional engagements with many people in this local legal community, but those professional relationships, without more, do not lead to personal bias against litigants."). Ultimately, the undersigned does not have any relationships with any of the Defendants that would bear on rulings in this matter, nor would the undersigned's limited professional association with some of the Defendants create any personal bias so as to justify recusal. Disqualification is not required where only vague allegations of bias and prejudice are asserted. *See Focus Media, Inc. v. Nat'l Broadcasting Co. (In re Focus Media, Inc.)*, 378 F.3d 916, 930 (9th Cir. 2004).

Aside from perceived personal relationships, Hunter expresses his dissatisfaction with certain rulings that have been handed down in this case (again, by both the undersigned and by Judge B. Lynn Winmill) and asserts that this is an additional reason disqualification is necessary. Any frustration with rulings by Judge Winmill is essentially moot at this point as he is no longer involved in this case. As for the undersigned's rulings,

---

[4] The undersigned *does not* have a personal or social relationship with any defendant in this case.

Hunter has not made a showing that the Court's rulings were the "product[] of deep-seated favoritism or antagonism that made fair judgment impossible." *Id*. (internal quotation marks and alteration omitted). Hunter is welcome to disagree with the Court's rulings, but his motion for disqualification must be DENIED as it lacks sufficient supporting evidence.

### B. Motions for Fraud on the Court (Dkts. 4, 41, 51)

*1. Introduction*

Hunter's Motions to Vacate Judgment and for Fraud on the Court (Dkts. 4, 41, 51) center around his belief that the Idaho State Judgment of Conviction against him "was procured through Fraud on the Court." Dkt. 4, at 2. Specifically, Hunter believes that had a certain Audio-Video DVD been produced during discovery, it "would have shown the illegal acts" of the officers involved in the traffic stop and exonerated him. *Id.* Hunter claims that throughout his state court proceedings—during discovery, via motion practice, in post-conviction relief proceedings, and even on appeal—he (or his attorneys) requested this video multiple times and that the requests were either: 1) denied as irrelevant, unnecessarily, or frivolous; or 2) denied because the video does not exist / had been destroyed.[5]

Ultimately, it is somewhat difficult to determine what relief Hunter seeks through the instant lawsuit. He has already served the term of incarceration he was sentenced to in his Idaho State Court action; thus, this is not some type of *habeas corpus* case. That said—

---

[5] The record before this Court does not make clear what, if anything, happened to the DVD at issue. It *appears* such a DVD may have existed at some point, but no longer does.

as will be discussed in greater detail in the follow sections—precisely *because* Hunter has served his sentence, the Court is left with limited options. In his own words, Hunter seeks "the removal of my Judgment of Conviction, and I reserve jurisdiction to then seek relief from this Court for the Section 1983 Violations which occurred in my case." Dkt. 1, at 5. Although this language seems to suggest Hunter is holding back on his § 1983 claims at the present time, the parties address such claims and the Court will as well.

In addition, some of the defendants assert that Hunter's motion should be couched as a Federal Rule of Civil Procedure 60(b) motion[6] for "fraud;" however, Hunter makes clear that he is invoking the Court's authority pursuant to Federal Rule of Civil Procedure 60(d)(3)[7] and his belief that there has been "fraud on the Court." Dkt. 40.

---

[6] Federal Rule of Civil Procedure 60(b) provides as follows:

(b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6) any other reason that justifies relief.

[7] Federal Rule of Civil Procedure 60(d) provides as follows:

(d) Other Powers to Grant Relief. This rule does not limit a court's power to:

> (1) entertain an independent action to relieve a party from a judgment, order, or proceeding;

Upon review, the Court agrees with Hunter and will review the matter under Federal Rule of Civil Procedure 60(d). The Court will also construe Hunter's claims as alleging § 1983 constitutional violations in order to afford him the broadest base to support his claims.

    *2.  Legal Standard*

Courts possess the inherent equity power to set aside judgments obtained on the basis of fraud. *U.S. v. Estate of Stonehill*, 660 F.3d 415, 443 (9th Cir. 2011) (citing Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991)). The power to vacate judgments for fraud is exercised "with restraint and direction." *Id.* The Court will only exercise this power when fraud is established by clear and convincing evidence. *England v. Doyle*, 281 F.2d 304, 310 (9th Cir. 1960). Fraud on the Court requires a consideration of whether the purported fraud "harmed the integrity of the judicial process", not whether any fraudulent conduct "prejudiced the opposing party." *Alexander v. Robertson*, 882 F.2d 421, 424 (9th Cir. 1989).

Relevant to this case, it is important to note that the nondisclosure of evidence is typically insufficient to support a claim of fraud on the court; and "perjury by a party or witness, by itself, is not normally fraud on the Court." *In re Levander*, 180 F.3d 1114, 1119 (9th Cir. 1999). To justify setting aside a judgment, the fraud must amount to "an unconscionable plan or scheme which is designed to improperly influence the court and its

---

(2) grant relief under 28 U.S.C. §1655 to a defendant who was not personally notified of the action; or
(3) set aside a judgment for fraud on the court.

decision." *Abatti v. C.I.R.*, 859 F.2d 115, 118 (9th Cir. 1988) (quoting *Toscano v. Commissioner*, 441 F.2d 930, 934 (9th Cir. 1971)).

Courts exercise their inherent power in this regard via application of Rule 60(b) and 60(d). *See, U.S. v. Beggerly,* 524 U.S. 38, 45-46 (1998); *Payton v. Davis,* 906 F.3d 812, 817 (9th Cir. 2018).

*3. Analysis*

Unfortunately, the Court cannot reach the merits or underlying conduct raised in Hunter's Motions at this time because there are numerous jurisdictional barriers to his claims as a whole. The Court has outlined how it views Hunter's claims and the applicable legal standard in order to set the parameters and scope of the other motions and legal theories the Court will discuss below.

The Court turns next to Defendants' Motions to Dismiss.

**C.  Motions to Dismiss (Dkts. 12, 13, 39, 44, 47, 49, 53)**

Defendants in this case have filed numerous motions to dismiss. Dkts. 12, 13, 39, 44, 47, 49, 53. While there are some variations within the motions in relation to specific defendants, each motion highlights certain legal doctrines that bar the instant lawsuit. The Court will address each argument in turn. Ultimately, these doctrines appear to foreclose Hunter's case. Per its standard practice, however, the Court will allow Hunter an opportunity to amend his pleadings to remedy the Court's concerns. The Court will then determine if Hunter's case can be saved or must be dismissed outright.

The Court will also address some additional arguments herein—specific to certain Defendants—which Hunter will likewise have to overcome if he decides to amend his complaint.

### 1. Rooker-Feldman Doctrine

Under the long-standing *Rooker-Feldman* Doctrine, the Court lacks jurisdiction to hear Hunter's challenge to his state court judgment in this case. Having lost at the State District Court level, Hunter's remedy was to appeal, which he did. Having lost his appeal, however, Hunter cannot cross over to the Federal Court and "appeal" again. As will be repeated throughout this decision, while Hunter may be disappointed in how things worked out for him in state court, he has already utilized the resources and avenues available to him to remedy his concerns. Likewise, even if there were other determinations or rulings Idaho State Court Judges could have previously made—and the Court is not implying there were, only that there are always alternative outcomes—it is not the function of this Court to review those decisions.

The underlying basis for Hunter's claims in this matter relate directly to the validity of his underlying criminal conviction. Underlying that presumption are a variety of arguments—perceived flaws in discovery disclosure, various rulings, whether the correct Judge presided over his case etc.—each of which are a part of his state court criminal conviction and cannot be collaterally attacked in federal court.

Whether federal subject matter jurisdiction exists is a question of law. *Nike, Inc. v. Comercial Iberica de Exclusivas Deportivas, S.A.,* 20 F.3d 987, 990 (9th Cir.1994). A federal district court has no jurisdiction "over challenges to state-court decisions, in

particular cases arising out of judicial proceedings, even if those challenges allege that the state court's action was unconstitutional." *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 486 (1983). "This rule applies even though . . . the challenge is anchored to alleged deprivations of federally protected due process and equal protection rights." *Id.* at 486 (internal citation omitted). Under 28 U.S.C. § 1257, "the proper court in which to obtain such review is the United States Supreme Court." *Worldwide Church of God v. McNair,* 805 F.2d 888, 890 (9th Cir.1986). This rule of law is known as the "Rooker–Feldman doctrine."

> As the United Supreme Court has explained:
>
> In *Rooker v. Fidelity Trust Co*., the parties defeated in state court turned to a Federal District Court for relief. Alleging that the adverse state-court judgment was rendered in contravention of the Constitution, they asked the federal court to declare it "null and void." This Court noted preliminarily that the state court had acted within its jurisdiction. If the state-court decision was wrong, the Court explained, "that did not make the judgment void, but merely left it open to reversal or modification in an appropriate and timely appellate proceeding." Federal district courts, the *Rooker* Court recognized, lacked the requisite appellate authority, for their jurisdiction was "strictly original." Among federal courts, the *Rooker* Court clarified, Congress had empowered only this Court to exercise appellate authority "to reverse or modify a state-court judgment.

*Exxon Mobil Corp. v. Saudi Basic Industries Corp*. 544 U.S. 280, 284 (2005) (internal citations omitted).

The *Rooker–Feldman* doctrine "bars federal courts from exercising subject matter jurisdiction over a proceeding in 'which a party losing in state court' seeks 'what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal

rights.' " *Doe v. Mann,* 415 F.3d 1038, 1041 (9th Cir.2005) (quoting *Johnson v. De Grandy,* 512, U.S. 997, 1005–06 (1994)). The doctrine bars not only issues heard in the state court action, but "any issue raised in the suit that is 'inextricably intertwined' with an issue resolved by the state court in its judicial decision." *Mann,* 415 F.3d at 1042 (citing *Noel v. Hall,* 341 F.3d 1148, 1158 (9th Cir.2003)). Here, whether discovery issues were properly resolved, whether motions were ruled upon "correctly," or whether the correct judge presided over Hunter's case, would each "in substance" require review of the state court judgement.

The *Rooker–Feldman* doctrine "will give way where Congress otherwise grants federal courts the authority to review state court judgments." *Id.* at 1047. Here, Hunter asserts that the state Court's rulings were based on Defendants' fraud in concealing, destroying, or misrepresenting evidence. In order to overcome *Rooker–Feldman*, however, Hunter must point to a federal statute showing that Congress has "permit[ted] federal courts to review state court judgments." *Id.* at 1043. Hunter's reliance on Federal Rule of Procedure 60—or even 42 U.S.C. § 1983—is not enough to overcome *Rooker–Feldman*.

Because Hunter essentially requests that this Court review the state court judgment the same way a state appellate court would, such is a de facto appeal of a state court judgment and the very thing the *Rooker-Feldman* Doctrine prohibits. *Doe v. Mann*, 415 F.3d 1038, 1041–42 (9th Cir.2005). *See also Dashiell v. Idaho*, 2007 WL 2316606, *1 (D. Idaho 2007) (finding that in the absence of a statute authorizing suit, the *Rooker-Feldman* Doctrine governed, and case must be dismissed).

*2. Heck v. Humphrey Doctrine*

The United States Supreme Court has long held that Section 1983 cannot be used as "a collateral attack on [an individual's] conviction[.]" *Heck v. Humphrey*, 512 U.S. 477, 484 (1994). *Heck* and its progeny reaffirm that "a prisoner in state custody cannot use a § 1983 action to challenge 'the fact or duration of his confinement.'" *Wilkinson v. Dotson*, 544 U.S. 74, 78 (2005) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 489 (1973)).

The Ninth Circuit has extended the *Heck* doctrine to § 1983 claims brought by unincarcerated individuals challenging the validity of the underlying arrest that led to a criminal conviction. *See Smithart v. Towery*, 79 F.3d 951, 952 (9th Cir. 1996) ("There is no question that *Heck* bars Smithart's claims that defendants lacked probable cause to arrest him and brought unfounded criminal charges against him."); *Lyall v. City of Los Angeles*, 807 F.3d 1178, 1192 (9th Cir. 2015) (relief from *Heck* is only available to individuals— incarcerated or not—who are "challenging loss of good-time credits, revocation of parole or similar matters, not challenges to an underlying conviction"); *see also Shea v. Ohio*, No. 96–3458, 1997 WL 144228, at * 1 (6th Cir. Mar. 27, 1997) (holding *Heck* applicable in non-prisoner cases).

Ultimately, as this Court has previously found, "a judgment questioning Plaintiff's arrest and later conviction necessarily implicates *Heck* because one fulcrum of Plaintiff's claims [] is an allegation of an unconstitutional conviction." *Carney v. Ford*, 2016 WL 11398122, *5 (D. Idaho 2016).

In this case, Hunter has not alleged that his underlying conviction has been reversed, expunged, or declared invalid. Accordingly, his claims for relief pursuant to § 1983 are necessarily barred by the *Heck* doctrine. *Skinner v. Switzer*, 562 U.S. 521, 534 (2011)

(Section 1983 is not available if a favorable judgment would "necessarily imply the invalidity of [their] conviction[s] or sentence[s][.]") (quoting *Heck*, 512 U.S. at 487); *Carney*, 2016 WL 11398122, *5; *see also Fairbanks v. Canyon County*, 2018 WL 337521, at *2 (D. Idaho 2018).

### 3.   *Res Judicata*

Hunter's claims are also barred by the doctrine of *res judicata* because he has previously litigated the same claims against the same or similar parties in Idaho state court. "When determining the preclusive effect of a state court judgment, federal courts must give the same preclusive effect to a state-court judgment as another court of that State would give." *Edwards v. Mills*, 2017 WL 1382911, *3 (D. Idaho 2017) (quoting *Parsons Steel, Inc. v. First Alabama Bank*, 474 U.S. 518, 523 (1986) (internal quotations omitted)).

In Idaho, *res judicata* applies when (1) the present claim involves the same parties as the original action, or their privies; (2) the present claim arises out of the same transaction or series of transactions as the original action, such that identical claims were raised or could have been raised; and (3) the original action ended in a final judgment on the merits. *Edwards*, 2017 WL 1382911, *3 (citing *Berkshire Investments, LLC v. Taylor*, 278 P.3d 943, 951 (Idaho 2012)).

Here, Hunter's claims are barred by the doctrine of *res judicata* because: (1) he is challenging the validity of his criminal conviction against the entity that collected the evidence for his criminal trial; (2) the claims all arise from the same traffic stop and the missing video of the traffic stop; and (3) Hunter's criminal conviction resulted in a final judgment that was twice appealed and twice affirmed on appeal.

Hunter had ample opportunity to raise the alleged fraud in the underlying action and did in fact challenge his conviction based upon the purportedly missing evidence. Indeed, when Hunter filed a petition for post-conviction relief, he alleged essentially the same facts he does here—that his prior defense attorneys had provided him ineffective assistance of counsel and that the DVD-Audio would have changed the outcome of his case. *Hunter,* 2015 WL 3823828, at *2–3. In those proceedings, the State Court allowed Hunter an opportunity to depose his prior attorneys, as well as other individuals involved in his criminal case. *Id.* The State Court held that there was no issue of material fact on the claims raised and dismissed Hunter's petition for post-judgment relief. *Id.* That denial was affirmed on appeal. *Id.*

Critically, the Idaho Court of Appeals found that "the discovery Hunter requested in his motion was either speculative in nature or unnecessary to protect his substantial rights" and that his claims that this particular discovery would have altered the outcome of his case were "conclusory and wholly unsupported." *Hunter,* 2015 WL 3823828, at *4–5. Ultimately, the Idaho Court of Appeals found that "Hunter [] failed to show that any of his discovery requests were either not speculative or were necessary to protect his substantial rights." *Id.* at *6.

Because the present action involves the same parties (or their privies) as the prior action and asserts the same claims as have already been litigated, Hunter is barred under the doctrine of *res judicata* from asserting these same claims in this Court.[8]

### 4. *Other Barriers*

At this point, the Court has outlined numerous doctrinal reasons Hunter's claims cannot proceed. There are yet others.[9] Other substantive reasons also exist for dismissal. For example, it appears there are statute of limitations problems associated with Hunter's claims,[10] and that many of the defendants are either improper parties and/or are entitled to

---

[8] The only "claim" that appears to be new (or at least was not litigated below) relates to Hunter's assertion that the Idaho State Court District Judges engaged in some sort of deception or improper practice when transferring his various cases/appeals etc. Hunter claims this amounts to those Judges acting outside of their authority or without authority at all. This assertion lacks merit. First, it appears that certain matters were joined in light of their related nature and because another judge was already handling one of Hunter's pending cases. Dkt. 57, at 6. Hunter's more general allegations that the District Judges (specifically the Administrative District Judge) engaged in deception by disqualifying themselves or "moving" his cases around are likewise without merit. The undersigned was a State Court District Judge for ten years (and an Administrate District Judge for three years) and is familiar with the practice of assigning and/or reassigning cases for judicial economy and efficiency. That is exactly what occurred in this case. The Court consolidated Hunter's two federal cases for judicial economy and consistency. The Court does not expect Hunter, or any party for that matter, to research how cases are assigned—in State or Federal Court—however, blanket accusations—again, concerning state court judges and/or federal judges—do not give rise to any findings of impropriety. The Court finds Hunter's claims against Judges in Kootenai County (whether raised below or not) are unavailing.

[9] For example, it appears that the *Younger* Abstention Doctrine applies in this case in well. In *Younger v. Harris,* the Supreme Court reaffirmed the long-standing principle that federal courts sitting in equity cannot, absent exceptional circumstances, enjoin pending state criminal proceedings. 401 U.S. 37, 43–54 (1971). Here, Hunter initiated the present case while his post-conviction case was ongoing in the Idaho Court of Appeals. This was improper and is another jurisdictional bar this Court cannot overcome to hear Hunter's claims.

[10] Under 42 U.S.C. § 1983, Hunter was required to bring this action within two years of the knowledge of the harm suffered. The latest date the Court can surmise that could have been in this case was the date of

qualified immunity.[11] Not to mention there are other Defendant-specific arguments regarding the sufficiency of Hunter's pleadings which likely warrant dismissal as well.[12]

Hunter's does not dispute the veracity of the jurisdictional bars asserted by Defendants in this case, but he does dispute their application. *See generally* Dkt. 68. In his estimation, those doctrines apply *only* if a party had a fair and adequate opportunity to present his or her case below and since he did not, they don't apply in his case and this court should "jump in" and begin reviewing Idaho State Court actions dating as far back as 2007. This, however, is inappropriate. Hunter had his chance to litigate all of the issues he now raises before this Court. There is nothing in the record to suggest otherwise.

It is clear Hunter does not agree with some of the prior rulings in his state court proceedings. Maybe this Court would have found differently; maybe it would not have. But such is of no consequence as the issues were fully litigated, reviewed, and addressed in the appropriate forum—again, just not to Hunter's liking. For all of these reasons, the Court cannot allow Hunter's case to proceed as written.

---

the denial of Hunter's public records request, which revealed that the video footage he sought had been destroyed. That occurred on June 11, 2015—almost four years before Hunter filed these lawsuits.

[11] Specifically, Defendants State of Idaho, Governor Little, and Attorney General Wasden likely are not proper parties in this case based upon their job roles vis-à-vis the information Hunter seeks (the missing DVD). Additionally, all are immune from private damage actions in federal court under the Eleventh Amendment. *Jackson v. Hayakawa*, 682 F.2d 1344, 1349 (9th Cir. 1982). Similarly, Defendants McHugh and Wick are entitled to immunity for all actions taken while performing their duties as employed by the government. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). Defendant Judge Haynes is entitled to immunity for the same reasons. *Schucker v. Rockwood*, 846 F.2d 1202, 1204 (9th Cir. 1988).

[12] For example, in his Motion to Dismiss (Dkt. 39), Defendant John Redal argues the Court should dismiss Hunter's claims against him as they are so general and threadbare they cannot withstand the requirements of Federal Rules of Civil Procedure 9 and 12.

# IV. CONCLUSION

As Hunter himself notes, fraud on the Court is a unique remedy reserved for only "the most egregious cases" and should be "construed narrowly." Dkt. 4, at 7 (*citing Toscano v. Comm'r*, 441 F.2d 930, 933 (9th Cir. 1971)). Here, not only does the Court *not* see any "egregious" situations warranting review, but there are numerous jurisdictional bars that prohibit the Court from reviewing Hunter's claims in the first instance.

The Court has spent considerable time reviewing the voluminous record in this matter. It has—per its obligation—construed things as liberally as possible and endeavored to fit any of Hunter's claims into the legal theories he espouses.[13] Such efforts, however, have been like trying to fit a square peg in a round hole. The Court understands Hunter's arguments—and to some degree his frustrations—but cannot grant the relief he requests.

Accordingly, Hunter's Complaint must be dismissed.

That said, the Ninth Circuit has continually held that dismissal of a complaint without leave to amend is inappropriate unless it is beyond doubt that the complaint could not be saved by an amendment. *See Harris v. Amgen, Inc.,* 573 F.3d 728, 737 (9th Cir. 2009). The Court today has dismissed Hunter's complaint for very specific jurisdictional

---

[13] Said differently, even with the numerous jurisdictional bars present in this case, the Court has thoroughly reviewed Hunter's allegations and all supporting documents and cannot see any "clear and convincing" fraud that has been perpetrated on the Court or on Hunter. By all accounts, Hunter's claims and theories were reviewed by multiple Idaho Courts and multiple Idaho Judges. None found any error. That was the correct forum for Hunter's claims. This Court cannot review them at this point.

reasons and doubts any amendments could save his Complaint. This aside, it will not foreclose such an opportunity and, therefore, will dismiss the case without prejudice.

Should Hunter wish to amend his Complaint[14] to outline how his claims are not barred, he may *file a Motion for Leave to Amend Complaint*[15] identifying precisely how his proposed amended complaint complies with the Court's order. Any such motion shall be filed within 60 days of the date of this order. Once filed, Defendants may respond to Hunter's Motion, if they so desire, within 21 days. Hunter may file his reply, if any, within 14 days. The Court will then determine if Hunter's case may proceed or if it must be dismissed with prejudice.

## V. ORDER

**IT IS ORDERED:**

1.     Hunter's Motion to Disqualify (Dkt. 54) is DENIED.

2.     Defendants' Motions to Dismiss (Dkts. 12, 13, 39, 44, 47, 49, 53) are GRANTED. This case is DISMISSED WITHOUT PREJUDICE and CLOSED.

---

[14] To be clear, should Hunter choose to do so, he need only file one (1) Amended Complaint. That should be done in this case (Case 113) and address all claims he seeks to bring against all defendants.

[15] Instead of allowing Hunter an opportunity to amend his complaint outright and then undertaking a second round of motions to dismiss, the Court will require that Hunter file a Motion to Amend. In this manner, Hunter can not only amend his complaint, but he can also explain (in the motion to amend) how and/or why the amendments he made cure the Court's concerns outlined here and allow his claims to survive. Pursuant to District of Idaho Local Rule 15.1, in addition to any Motion to Amend outlining how his claims survive, Hunter shall attach a "redlined" copy of his complaint (highlighting the changes). As noted, Defendants can then respond, and Hunter can reply. This will streamline the motions that will inevitably follow Hunter's Amended Complaint and keep this case progressing forward.

3.      Hunter's Motions for Fraud and/or to Vacate Judgment (Dkts. 4, 41, 51)

and Motion for Summary Judgment (Dkt. 68) are DENIED as MOOT.

DATED: July 28, 2020

David C. Nye
Chief U.S. District Court Judge